# First National Bank of Gallitzin, Appellant, *v.* McNeelis.

*Contract—Assignment of bonds—Payment—Collateral security.*

Whether an assignment of bonds is in payment or as collateral security is a question of intention, depending upon the testimony in the particular case. In the absence of evidence tending to show an intention to pay and receive the securities assigned as satisfaction of the debt, in whole or in part, the law presumes that they were assigned only as collateral. The duty of establishing the contrary is affirmative and it rests upon the debtor. If he fails to perform the duty, the law makes a positive inference that the assignment is only as collateral security, and that inference is substantial evidence upon which the creditor may rely. The circumstance that the assignment of the security is absolute in form, is of no consequence on the question of interest, because the assignment simply operates to transfer the title.

Argued May 4, 1908. Appeal, No. 183, April T., 1908, by plaintiff, from judgment of C. P. Cambria Co., Sept. T., 1906, No. 343, on verdict for defendant in case of The First National Bank of Gallitzin *v.* E. T. McNeelis. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Assumpsit on a draft.   Before O'Connor, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* among others were in refusing binding instructions for plaintiff.

*Harvey Roland,* with him *J. W. Leech* and *Evans & Evans,* for appellant.—The circumstance that the assignment of the security is absolute in form is of no consequence on the question of intention, because the assignment simply operates to transfer the title: Eby v. Hoopes, 1 Penny. 175.

*M. D. Kittell,* with him *Philip N. Shettig,* for appellee.— Whether an assignment is absolute, or merely a collateral security for the performance of an agreement by the assignor is a question of fact dependent on attending circumstances, and proper for submission to the jury: Fryer v. Rishel, 1 Walker, 470; Knox v. Moatz, 15 Pa. 74.

Where a written assignment of a chose in action by a debtor to his creditor is silent as to whether it was made in payment of the debt, or not, parol evidence is admissible to show that it was as collateral security merely: Leas v. James, 10 S. & R. 307.

Opinion by Beaver, J., July 15, 1908:

Samuel R. Bullock, being indebted to the plaintiff in a large amount by overdrafts, cash items, notes, checks, drafts, etc., the amount being apparently undetermined, was met by the representatives of the bank at Altoona and, as a result of the conference, the following agreement was made:

"This article of agreement made and concluded this seventh day of January, 1905, by and between Sam. R. Bullock and The First National Bank of Gallitzin, that the said Sam'l. R. Bullock, the said first party hereby named, is to deliver to the Hanover National Bank of the city of New York, fifty thousand dollars worth of bonds of The Altamonte Water Supply Co. bonds.   The same to be delivered to Hanover National Bank

of New York in fee simple for the account of The First National Bank of Gallitzin, and for value received I hereby acknowledge to have received one dollar ($1) in hand paid, same being in full payment of same. It is also further agreed that on the payment of fifteen thousand dollars to the said Gallitzin First National Bank, that the said fifty thousand dollars worth of Altamonte Water Supply Co. bonds are to be returned to the said Sam'l. Bullock. As payments are made to the bank, the bonds are to be returned pro rata. Witness my hand and seal this seventh day of January A. D. 1905.

Attest:

"SAM'L. R. BULLOCK [Seal].

"C. DELAFIELD
"D. P. HUDSON."

The principal question arising in this case is the legal construction to be given to this paper. Were the bonds to be delivered and accepted by the plaintiff bank as actual payment of the indebtedness of Bullock, or were they given as collateral security?

Among the drafts in the hands of the bank at the time of this settlement was one drawn by Bullock upon the defendant, accepted by the latter. It was not then due, and later in the month, namely, January 17, 1905, Bullock drew his draft upon the defendant for the sum of $400, admittedly to take up a draft for like amount maturing on that day. The draft was accepted by the defendant and, as the statement was amended at the trial, constitutes the only demand of the plaintiff against the defendant, although the statement, as originally filed, included two other drafts, drawn by Bullock upon, and accepted by, the defendant.

The understanding of Bullock and the bank as to the nature of the agreement made at Altoona and above quoted is shown by a subsequent transaction which took place on January 26, 1905, resulting in the giving of a judgment note by Bullock to the representative of the bank for the sum of $15,000, upon which a judgment was entered in the court of common pleas of Cambria county. The consideration for this judgment is

shown by a receipt or certificate given by one J. R. Smith, who was the representative of the bank, as follows:

"GREENSBURG, PA., Jan. 26th, 1905.

"This is to certify that I have taken from Samuel R. Bullock, in trust for the use of the First National Bank of Gallitzin, Pa., a judgment note of even date herewith, in the sum of fifteen thousand dollars, conditioned for the payment of all notes, drafts, checks or other papers now held by the said First National Bank, in which the said Samuel R. Bullock is maker, endorser or in any other way liable to the said First National Bank, and upon payment to be made to the said bank of all his liabilities to the said bank whether upon the notes, checks, drafts or in any other way, then this judgment note or judgment entered thereon shall be considered paid and satisfied.

(Signed)        " J. R. SMITH.

"I hereby certify that the above judgment note was given on the terms set forth in the foregoing certificate.

(Signed)        " SAM'L. R. BULLOCK."

As we construe the agreement entered into by the representatives of the bank and Bullock at Altoona, the bonds of the Altamonte Water Supply Company were to be delivered to the Hanover National Bank of New York for the account of the First National Bank of Gallitzin simply as security for the indebtedness of Bullock. The words "fee simple" in our view do not imply that the bonds were to be an actual payment of the indebtedness of Bullock to the bank, but that they were to be clear of claims of all other persons. The subsequent part of the agreement, it seems to us, makes this plain: "It is also further agreed that, on the payment of fifteen thousand dollars to the said Gallitzin First National Bank, that the said fifty thousand dollars worth of Altamonte Water Supply Co. bonds are to be returned to the said Samuel R. Bullock. As payments are made to the bank, the bonds are to be returned pro rata."

That this agreement was so understood by the parties, appears, it seems to us, very clear from the subsequent dealings

between them. The McNeelis draft, which is the subject of this suit, was included in the settlement at Altoona, and yet on the seventeenth of the same month, ten days after the settlement, a new draft is drawn by Bullock upon McNeelis and accepted by him to lift the draft which, if the delivery of the bonds was an absolute payment, had been paid.

If the delivery of the bonds was intended to be and accepted by the bank as payment, why the judgment note made on January 26, nearly twenty days after the alleged settlement at Altoona, under the terms and conditions set forth in the certificate or receipt above quoted, admittedly collateral security for the same indebtedness?

It is very clear, both from the contents of the papers themselves, and from the understanding of the parties, as indicated by the transactions which followed, that the bonds were delivered and accepted as collateral security, to be returned to Bullock when his indebtedness to the bank was paid, or pro rata as it was paid.

The Altoona agreement was in writing. Its legal effect was for the court. Admitting that in the first part of the agreement the assignment of the Altamonte bonds would seem to be absolute, the agreement, nevertheless, provides for their return, not for their resale or repurchase, and provides further for the payment of the sum of $15,000 as a debt not then paid. The court below, in construing this agreement, held that the assignment was absolute and contained an option on the part of Bullock to repurchase the bonds. We do not so construe it. The word "return" implies a redelivery, because of some right reserved. The provision for future payment would be meaningless, if the debt were paid by the delivery of the bonds. This seems to us to be the plain intent of the paper, irrespective of the presumption raised by the law in regard to the assignment of personal property under such circumstances. "Whether such assignment is in payment or as collateral security is certainly a question of intention, depending upon the testimony in the particular case. In the absence of evidence tending to show an intention to pay and receive the securities assigned as satisfaction of the debt, in whole or in part, the

law presumes that they were assigned only as collateral. The duty of establishing the contrary is affirmative and it rests upon the debtor. If he fails to perform this duty, the law makes a positive inference that the assignment is only as collateral security, and that inference is substantial evidence upon which the creditor may rely.

"The circumstance that the assignment of the security is absolute in form is of no consequence on the question of intent, because the assignment simply operates to transfer the title:" Eby v. Hoopes, 1 Penny. 175.

We have here, then, first the presumption of law that the assignment was simply as collateral and not as payment. We have the Altoona agreement which upon its face, as we construe it, in providing for the return or the return pro rata as payment is made, is indicative, first, of the right to reclaim, and, secondly, that payment was not intended. Parol testimony on the part of Bullock, as to the intention, cannot contradict this paper. In addition, we have what is equivalent to Bullock's written declarations as to the effect of the assignment, first in his subsequently drawing the draft upon McNeelis and giving the additional collateral in the judgment note delivered to Smith, as the representative of the bank, at Greensburg, later in the month. This evidence is so overwhelming and conclusive in its character that the parol testimony of Bullock as to what the intention was cannot be permitted to overcome it, contradicting as it does the paper under which the bonds were delivered and being entirely inconsistent with his subsequent written statement. Whether or not this should have been received is not raised by any of the specifications of error and is not, therefore, considered, but certainly no verdict should be allowed to stand in the face of the Altoona agreement itself and of the manifest intention of the parties, as shown by the subsequent transactions above referred to, which are entirely inconsistent with any intention to use the bonds delivered to the Hanover National Bank as payment or of the plaintiff bank to receive them as such.

It is unnecessary to discuss the question further, inasmuch as this practically determines the entire question involved.

Judgment reversed, motion for judgment notwithstanding the verdict reinstated and, upon the consideration of the whole record, judgment is now entered for the plaintiff, n. o. v.